*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DLT II, a legally protected person, by Next Friend
DANNY W. THOMASON, and DANNY W.
THOMASON individually,

      Plaintiffs-Appellees,

v

ALLSTATE INSURANCE COMPANY, also known
as ASMI AUTO INSURANCE,

      Defendant/Cross-Plaintiff/Cross-
      Defendant-Appellant,

and

MICHELLE HOFFMAN,

      Defendant/Cross-Defendant/Cross-
      Plaintiff.

UNPUBLISHED
May 25, 2023

No. 360502
Calhoun Circuit Court
LC No. 2011-000281-NF

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

Defendant-appellant, Allstate Insurance Company, appeals by leave granted[1] the trial court's order granting plaintiffs[2] DLT and Danny Thomason's motion to compel Allstate's

---

[1] *DLT II v Allstate Insurance Company*, unpublished order of the Court of Appeals, entered August 11, 2022 (Docket No. 360502).

[2] Michelle Hoffman is not a party to this appeal, as Hoffman did not join plaintiffs Thomason and DLT's motion to compel. However, after the court granted Thomason and DLT's motion to compel, Hoffman filed her own motion, which the court also granted. Allstate also filed an application for leave to appeal the court's grant of Hoffman's motion, which this Court denied.

compliance with the consent judgment.  On appeal, Allstate argues that the trial court erred by holding that the legislative amendments to the no-fault act contained in 2019 PA 21 did not apply to pre-amendment automobile injuries even though the claims for benefits accrued after the effective date of the amendments.  After Allstate filed this appeal, this Court rejected the exact arguments Allstate makes here.  See *Andary v USAA Cas Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 356487), lv gtd ___ Mich ___; 979 NW2d 823 (2022).  We are bound by *Andary*, under MCR 7.215(J)(1), to affirm the trial court's decision, and "a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals," MCR 7.215(C)(2).  Moreover, because the Supreme Court has already granted leave in *Andary*, we cannot declare a conflict.  MCR 7.215(J)(2).  *Andary v USAA Cas Ins Co*, 979 NW2d 823 (Mich, 2022).  For these reasons alone, we must affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from an automobile accident on March 7, 1995, where DLT, who was five years old at the time, sustained a traumatic brain injury, necessitating around-the-clock attendant care services for the remainder of his life.  DLT's mother, Michelle Hoffman, maintained an automobile insurance policy with Allstate, and immediately following the accident, Allstate began paying Personal Injury Protection (PIP) benefits to or for the benefit of DLT, including payments related to the attendant care services provided by DLT's parents, Hoffman and Thomason.

In 2011, a dispute arose between the parties regarding the hourly rate charged by Hoffman and Thomason for providing attendant care services to DLT, prompting plaintiffs' suit in the Calhoun Circuit Court.  The parties entered into a consent judgment on October 10, 2011, which provided that Allstate would pay Thomason and Hoffman $16 per hour for attendant care services provided to DLT until March 1, 2012.  Thereafter, the hourly rate and amount of care necessary for DLT's care were to be determined by the results of DLT's physical medicine and rehabilitation (PM&R) and occupational therapy (OT) evaluations.  Moreover, according to the consent judgment, "[i]f legislation is enacted which imposes limits on the number of hours and/or the hourly rate payable to family care givers, such as Danny W. Thomason and Michelle Hoffman, then Allstate Insurance Company shall be authorized to immediately adjust the number of hours paid and/or the hourly rate paid to conform to the legislative enactment, assuming such legislation is deemed to affect ongoing claims which predate the effective date of the legislation.  If there is a disagreement as to retroactivity, this Court will decide that issue on motion by any party . . . ."

Pursuant to the consent judgment, in 2012, DLT underwent physical medicine and rehabilitation (PM&R) and occupational therapy (OT) evaluations to determine the level of attendant care necessary for his care and the reasonable hourly rate for the care.  The OT specialist opined that $22 per hour represented a reasonable fee for the attendant care services provided to

---

*DLT II v Allstate Ins Co*, unpublished order of the Court of Appeals, entered January 31, 2023 (Docket No. 362509).  Following this Court's denial for leave, Allstate filed an application for leave to our Supreme Court, which remains pending.

DLT, and the hourly rate was adjusted accordingly.[3] The most recent dispute, and the subject of this appeal, concerned the no-fault reforms contained in 2019 PA 21 and 2019 PA 22, effective June 11, 2019, where the Legislature introduced, among other things, a new fee schedule and other PIP benefit limitations under MCL 500.3157 for treatment or training rendered after July 1, 2021. On June 30, 2021, Allstate notified plaintiffs that pursuant to the 2019 amendments of the no-fault act, Allstate would begin adjusting the hourly rate for attendant care services to the reduced statutory rate of $12.59 and offered to waive the 56-hour weekly limitation. Plaintiffs subsequently filed their motion to compel compliance with the consent judgment, arguing that retroactive application of the 2019 amendments would result in an unconstitutional deprivation of the parties' vested contractual rights under the Contracts Clause of this state under Const 1963, art 1, § 10. Plaintiffs further argued that the Legislature did not intend for the amendments to apply retroactively, considering that the amended statutes did not include any language suggesting retroactive application.

In response, Allstate argued that the 2019 amendments applied to claims accrued after the effective date of the amendments, regardless of when the automobile accident occurred. Allstate argued that applying the 2019 amendments to ongoing PIP claims related to pre-amendment injuries does not render the statute as operating retroactively because, under MCL 500.3110(4), a person's right to receive PIP benefits accrue not when the injury occurs but, instead, as the allowable expense is incurred. Allstate argued that the adjustments made to DLT's care complied with MCL 500.3157 and that the Legislature demonstrated its intention for the statute to apply to pre-amendment injuries in MCL 500.2111f(8), which directed insurers to pass on realized savings from the application of MCL 500.3157 for accidents that occurred before July 2, 2021. Additionally, Allstate alleged that plaintiffs consented to these changes by entering the consent judgment, which allowed Allstate to adjust the PIP benefits for attendant care provided to DLT in accord with future legislation. Plaintiffs' Contract Clause argument was moot, Allstate argued, because the amendments were not retroactive and plaintiffs consented to the adjustments in the consent judgment.

Following oral arguments on plaintiffs' motion to compel, the trial court entered its February 8, 2022, order granting plaintiffs' motion, holding that the 2019 amendments did not apply to ongoing PIP claims premised upon motor vehicle accidents pre-dating the amendments. The court relied on the language of MCL 500.3157 and determined that the Legislature did not manifest an intent for retroactive application of the statute. The court concluded that retroactive application of the 2019 amendments would take away or impair vested rights that DLT acquired under the previous reiteration of the law and by the consent judgment. On this basis, the court held that 2019 legislative amendments did not apply to the attendant care services provided to DLT, either as to the hourly rate or as to the number of hours of allowable services per week, and

---

[3] Although Allstate disputed this amount, on July 31, 2012, the trial court granted plaintiffs' first motion to compel, ordering Allstate to pay, at a rate of $22 per hour, for attendant care services provided by Hoffman and Thomason for DLT's care.

ordered Allstate to continue to pay for the attendant care services provided to DLT at a rate of $22 per hour.

## II. STANDARD OF REVIEW

The proper interpretation of a consent judgment is a question of law subject to de novo review. *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). Statutory interpretation is an issue of law that is also reviewed de novo. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548; 685 NW2d 275 (2004).

## III. NO-FAULT REFORMS

Allstate argues that the trial court erred in holding that MCL 500.3157(2) and (7) did not mandate the reduction of payments for DLT's attendant care services rendered after July 1, 2021.

In June of 2019, the Legislature enacted 2019 PA 21 and 2019 PA 22, making significant changes to the no-fault regime. Among the reforms, the Legislature amended MCL 500.3157 to include fee schedules and limitations to the payment of PIP benefits, which capped the amount reimbursable to medical providers or persons rendering treatment to an injured person for an accidental bodily injury under the no-fault act. See MCL 500.3157(2) and (7). According to MCL 500.3157, the amended fee schedule limitations went into effect on July 1, 2021, and the new reimbursement limitations were applied to treatment rendered on July 2, 2021, or later. MCL 500.3157(14) ("Subsections (2) to (13) apply to treatment or rehabilitative occupational training rendered after July 1, 2021."). The legislative reforms to MCL 500.3157 also operated to limit the reimbursable hours of in-home attendant care to 56 hours per week when certain enumerated individuals, including relatives, provided the services. MCL 500.3157(10).[4]

Allstate's arguments are precluded by this Court's decision in *Andary*, which held that persons injured in motor vehicle accidents before the Legislature enacted 2019 PA 21 and 2019 PA 22 were not subject to the limited PIP benefits under the amendments because "the Legislature did not clearly demonstrate an intent for the amendments to apply retroactively to persons injured in pre-amendment accidents." *Andary*, ___ Mich App at ___; slip op at 1.

> In sum, the amended version of MCL 500.3157 contains no 'clear, direct, and unequivocal' expression of intent to have subsections (7) and (10) apply retroactively, i.e., to individuals who were injured before its effective date, even as to services provided after its effective date. Nor is such language found elsewhere in the amended no-fault act. MCL 500.2111f(8) is insufficient to overcome the presumption of retroactivity when it is located in a separate chapter of the insurance code and does not directly call for retroactive application. Further, retroactive

---

[4] MCL 500.3157(10) specifically states, in relevant part, that "[f]or attendant care rendered in the injured person's home, an insurer is only required to pay benefits for attendant care up to the hourly limitation in section 315 of the worker's disability compensation act of 1969, 1969 PA 317, MCL 418.315." MCL 418.315(1) provides that "[a]ttendant or nursing care shall not be ordered in excess of 56 hours per week . . . ."

application would alter the injured plaintiffs' settled rights and expectations under the pre-amendment no-fault act, which were obtained in exchange for premiums based on defendants' obligation to pay all reasonable charges not subject to fee schedules or caps. [*Id*. at 11 (citation omitted).]

Although Allstate sets forth compelling arguments that *Andary* was wrongly decided, we remain bound by this Court's published opinion in *Andary* and must reject Allstate's challenges in accordance with *Andary* until such time as the Supreme Court may overrule it. MCR 7.215(C)(2) and (J)(1). And, in keeping with the conclusions of *Andary*, Allstate's argument that the trial court's conclusions violated the consent judgment is without merit. Although the consent judgment considered future legislation imposing limitations on the number of hours or the hourly rate payable to attendant care service providers and permitted Allstate to adjust DLT's care plan in conformity, the judgment unambiguously conditioned any adjustments on a finding that "such legislation is deemed to affect ongoing claims which pre-date the effective date of the legislation." Thus, the trial court did not err by ordering Allstate's compliance with the consent judgment, as *Andary* explicitly rejected 2019 PA 21's application to pre-amendment injuries.

Nevertheless, we briefly share our agreement with Allstate's contentions and Judge MARKEY'S dissent in *Andary*. As explained in her dissent, prospective application of the 2019 amendments includes PIP benefits accrued after the amendment's effective date, regardless of when the injury occurred, because "[p]ersonal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred." MCL 500.3110(4); *Andary*, ___ Mich App at ___ (MARKEY, J., dissenting); slip op at 4. As an injured person's right to PIP benefits is triggered only when an allowable expense is incurred, applying the PIP benefit limitations in MCL 500.3157 to those expenses incurred after the effective date does not render the statute as operating retroactively. That fact holds true irrespective of when the injury occurred, as "[a] statute is not regarded as operating retrospectively because it relates to an antecedent event." *Id*. at ___; slip op at 5 (alteration in original), quoting *Hughes v Judges' Retirement Bd*, 407 Mich 75, 86; 282 NW2d 160 (1979). Rather, retroactive application of MCL 500.3157 would entail, for example, capping PIP benefits to treatment or training received *before* the amendments took effect, which is not the case here. *Andary*, ___ Mich App at ___ (MARKEY, J., dissenting); slip op at 5.

We also find highly persuasive MARKEY'S dissent from the majority's view that the Legislature manifested its intention for MCL 500.3157 to apply retroactively to pre-amendment accidental bodily injuries. *Id*. at ___; slip op at 5. The dissent directs us to 2019 PA 22's reformation of MCL 500.2111f(8) within the Essential Insurance Act, which provides, in relevant part, that "[a]n insurer shall pass on, in filings to which this section applies, savings realized from the application of *section 3157(2) to (12)* to treatment, products, services, accommodations, or training rendered to individuals who suffered accidental bodily injury *from motor vehicle accidents that occurred before July 2, 2021*." MCL 500.2111f(8) (emphasis added); *Andary*, ___ Mich App at ___ (MARKEY, J., *dissenting*); slip op at 5. Because MCL 500.3157 and MCL 500.2111f(8) address the same subject matter, they should be considered harmoniously to give reasonable effect to each of them. See *Husted v Dobbs*, 459 Mich 500, 516; 591 NW2d 642 (1999) (finding that the Essential Insurance Act and the No-Fault Act are in pari materia, and should be construed in harmony); *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998) (stating that "when this

-5-

Court construes two statutes that arguably relate to the same subject or share a common purpose, the statutes are in pari materia and must be read together as one law").

A reading of MCL 500.2111f(8) in conjunction with MCL 500.3157 shows that the Legislature intended for MCL 500.3157 to apply to ongoing PIP claims related to pre-amendment injuries. MCL 500.2111f(8) expressly references and incorporates MCL 500.3157 by mandating insurers to pass on savings realized from the application of MCL 500.3157(2) through (12) to the persons injured in automobile accidents occurring any time before July 2, 2021. We agree with the dissent that the majority's ruling that the 2019 amendments do not apply to pre-amendment accidents renders the dictates of MCL 500.211f(8) meaningless. *Andary*, ___ Mich App at ___ (MARKEY, J., dissenting); slip op at 6. It would be hardly advantageous for insurers to pass on realized savings under MCL 500.2111f(8) from treatment rendered to persons who suffered injuries before July 2, 2021, if the PIP benefit limitations under MCL 500.3157 did not also apply to automobile accidents occurring before the amendments took effect in June of 2019. In other words, the Legislature's directive under MCL 500.2111f(8) that insurers pass on the realized savings under MCL 500.3157 from PIP cases existing before July 2, 2021, demonstrates that the Legislature intended for MCL 500.3157 "to reach accidents and injuries occurring before June 11, 2019." *Id*. at ___ (MARKEY, J., dissenting); slip op at 6.

Lastly, the application of MCL 500.3157 to current and future PIP claims premised on automobile accidents pre-dating the effective date of the amendments does not "impair the obligation of contract" in violation of the Contracts Clause. Const 1963, art 1, § 10. To determine whether a law violates the Contract's Clause, this Court employs a three-prong test, with the first prong concentrating on "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Aguirre v Michigan*, 315 Mich App 706, 715; 891 NW2d 516 (2016) (quotation marks and citation omitted). The first prong requires consideration of three factors: (1) whether a contractual relationship exists, (2) whether the contractual relationship was impaired by the law, and (3) whether the impairment was substantial. *Id*. at 716 (quotation marks and citation omitted). If the law substantially impairs a contractual relationship, the second and third prongs assess whether "the legislative disruption of contract expectancies [is] necessary to the public good," and whether "the means chosen by the Legislature to address the public need are reasonable." *Id*. (alteration in original; quotation marks and citation omitted).

We disagree with the majority's view in *Andary* that retroactive application of 2019 PA 21 would violate the Contracts Clause, as the mandates of the 2019 amendments do not operate as a substantial impairment of a contractual relationship. Despite *Andary* concluding that retroactive application of MCL 500.3157(7) would "impair vested rights acquired under existing laws . . . with respect to transactions or considerations already past," *Andary*, ___ Mich App at ___ (opinion of the Court); slip op at 7 (quotation marks and citation omitted), an insured has no vested right to PIP benefits at the time of the automobile accident, MCL 500.3110(4) ("Personal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred."). Moreover, an insured's right to PIP benefits originates in statute and not in contract, and those rights may be revoked or amended at the will of the Legislature. *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 342; 948 NW2d 115 (2019) ("PIP benefits are mandated by the no-fault act, and a claimant's entitlement to PIP benefits is therefore based in statute, not in contract."); *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993) ("PIP

-6-

benefits are mandated by statute under the No-Fault Act, MCL 500.3105, and, therefore, the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits."); *Romein v Gen Motors Corp*, 436 Mich 515, 532; 462 NW2d 555 (1990) (stating that benefits and liabilities that are statutory in origin may be revoked or modified at the will of the Legislature); and *Lahti v Fosterling*, 357 Mich 578, 589; 99 NW2d 490 (1959) ("It is the general rule that that which the [L]egislature gives it may take away."). In other words, although the insurer has a contractual obligation to pay PIP benefits under the insurance policy, the insurer's obligations and the insured rights regarding the coverage are ultimately determined by the No-Fault Act and are subject to alteration at the whim of the Legislature. Thus, the mandates of 2019 PA 21 do not abrogate a vested or contractual right because the "*extent* of the PIP coverage is ultimately dictated by the no-fault act, not the contract." *Andary*, ___ Mich App at ___ (MARKEY, J., dissenting); slip op at 6.

Notwithstanding these considerations and until the Supreme Court resolves the validity of *Andary*, we hold that the trial court did not err in finding that the 2019 amendments did not apply to DLT's pre-amendment injuries.

Affirmed.

/s/ Jane E. Markey
/s/ Christopher M. Murray